PEOPLE v. BERLES

1. CRIMINAL LAW—MALICE—DEFINITION.

Malice is an intent to cause the very harm that results or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong likelihood that some such harm will result.

2. HOMICIDE—INTENT TO KILL—ASSAULT WITHOUT WEAPON.

An assault by blows without a weapon may, under certain circumstances, permit a jury to infer an intent to kill.

3. CRIMINAL LAW—INTENT—INFERENCES.

Intentions can only be proved by acts; where any act is knowingly committed which naturally and usually leads to certain consequences, a jury has the right to draw the inference that such results are intended.

4. HOMICIDE—INTENT TO KILL—EVIDENCE—INFERENCES.

An inference that the defendant intended to kill his infant daughter could be properly drawn by the jury where the evidence showed that someone had inflicted severe blows to the deceased which ultimately caused her death, that it had been the defendant who had found the deceased at the last of the three times before her death when she had somehow been injured, and that the defendant had slapped the deceased, but only in a stinging manner.

5. WITNESSES—CROSS-EXAMINATION—COLLATERAL MATTERS—DISCRETION.

A trial judge may, in his discretion, either limit or extend those areas upon which cross-examination upon collateral matters may proceed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 86, 87.
[2, 4] 40 Am Jur 2d, Homicide §§ 10, 50–53.
    Inference of malice or intent to kill where killing is by blow without weapon. 22 ALR2d 854.
[3] 21 Am Jur 2d, Criminal Law §§ 3, 81–83, 92.
[5] 58 Am Jur, Witnesses §§ 620, 621.
[6, 7] 40 Am Jur 2d, Homicide §§ 54, 70.

6. HOMICIDE—INVOLUNTARY MANSLAUGHTER—DEFINITION.

Involuntary manslaughter is the killing of another without malice and unintentionally but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

7. HOMICIDE — INVOLUNTARY MANSLAUGHTER — EVIDENCE — SUFFICIENCY.

Evidence consisting of testimony that the defendant, charged with killing his infant daughter, had been alone with his daughter at the times when three injuries suffered by the girl before her death had been discovered, that the defendant had slapped his daughter on two of the three times he had "discovered" her injuries, that the defendant and his wife had attempted to soothe the daughter by saying that the defendant wouldn't hit her again, and of expert testimony that the deceased had been subjected to a series of violent physical blows by a blunt instrument, such as a hand, administered over a period of time, and that the injuries from these blows caused her death was sufficient to support defendant's conviction of involuntary manslaughter (MCLA § 750.321).

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 February 2, 1971, at Grand Rapids. (Docket No. 9026.) Decided February 18, 1971.

Richard Berles was convicted of involuntary manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Bergstrom, Slykhouse & Shaw* (by *H. David Soet*), for defendant on appeal.

Before: FITZGERALD, P. J., and V. J. BRENNAN and T. M. BURNS, JJ.

FITZGERALD, P. J. Defendant Richard Berles was convicted of involuntary manslaughter, a violation

of MCLA § 750.321 (Stat Ann 1954 Rev § 28.553), on November 13, 1969, following a seven-day jury trial. On January 16, 1970, he was sentenced to serve 3 to 15 years in the state prison at Jackson. Defendant now appeals as a matter of right.

The facts which led to the arrest and subsequent conviction of defendant are as follows: defendant is the father of the deceased Debbie Berles, an only child, who was 11 months old at the time of her tragic death. Testimony elicited from defendant, his wife, the child's four grandparents, a neighbor, and a family friend, set forth a happy young family of three, the baby daughter seemingly injury-prone and possibly suffering from some mysterious and as yet undocumented blood malady. On the other hand, during the course of the trial, the people presented expert testimony which indicated that the deceased child was not suffering from a disease, but had been subjected to a series of violent physical blows administered over a period of time, thus causing the injuries which ultimately led to her death.

First, we shall consider whether the trial court erred in refusing to grant defendant's motion to dismiss the charge of second-degree murder on the grounds that the prosecution failed to establish a *prima facie* case on the issue of malice. Defendant now contends that he was not protected from the possibility of an improper jury compromise verdict. Citing *People* v. *Marshall* (1962), 366 Mich 498, defendant contends that he was improperly prejudiced by the inclusion of a greater charge where there is no evidence to support it, despite the fact that the verdict rendered was to a lesser charge. While we do not question the propriety of defendant's authority nor the proposition for which it stands, the matter would seemingly turn on whether

a *prima facie* case on the issue of malice was established.

In our previous decision in *People* v. *Geiger* (1968), 10 Mich App 339, the defendant who had been convicted of manslaughter unsuccessfully argued that the trial court had erred in instructing the jury on second-degree murder in the absence of proof of malice. The proofs showed the defendant had struck the decedent, his estranged wife, on two occasions, that she had external marks of violence upon her face, but had died as a result of choking while attempting to vomit. On the basis of these facts, this Court ruled that it was proper for the jury to infer malice in the mind of the defendant (p 343):

"Malice has been defined as 'an intent to cause the very harm that results *or some harm of the same general nature, or an act done in wanton or wilful disregard of the plain and strong liklihood that some such harm will result'*. (Emphasis supplied.) *People* v. *Hansen* (1962), 368 Mich 344, 350. Consistent with this definition, it follows that an assault by blows without a weapon may, under certain circumstances, permit a jury to infer an intent to kill. *Wellar* v. *People* (1874), 30 Mich 16; *People* v. *Collins* (1942), 303 Mich 34; also, see 22 ALR2d 854."

The Court further clarified its position by stating (p 344):

" 'The intent to kill must undoubtedly be established, as an inference of fact, to the satisfaction of the jury; but they may draw that inference, as they draw all other inferences, from any fact in evidence which, to their minds, fairly proves its existence. Intentions can only be proved by acts, as juries cannot look into the breast of the criminal. And where any act is knowingly committed which naturally and usually leads to certain consequences, a jury cer-

tainly has the right, in the exercise of ordinary sagacity, to draw the inference that such results are intended.' *People* v. *Scott* (1859), 6 Mich 287, 296."

No doubt the burden of proving the malice of one family member toward another can often be a very difficult matter, especially in instances where the deceased family member is a child. However, in the instant case there was considerable medical testimony which indicated that someone had inflicted severe blows to Debbie which ultimately caused her death. Furthermore, it had been defendant who had found Debbie at the times when the last three injuries had been sustained. There was also evidence that defendant slapped his daughter, but only in a stinging manner. Based upon the facts submitted to the jury, it would appear that an inference of malice was not improper. See *Corbin* v. *State* (1968), 250 Ind 147 (234 NE2d 261).

Next we shall address ourselves to a consideration of whether the trial court abused its discretion in restricting defendant's cross-examination of an expert witness upon collateral matters. A review of the transcript reveals that a hearing upon a separate record was conducted wherein two exhibits were considered. The trial court ruled against defendant's request to use such exhibits to impeach the expert testimony of Dr. Charles E. Black, a consulting pathologist. Defendant readily admits that the desired cross-examination would encompass only matters of a collateral nature.

It is well recognized that a trial judge may, in his discretion, either limit or extend those areas upon which cross-examination upon collateral matters may proceed. In *People* v. *Fleish* (1948), 321 Mich 443, 464, it was stated that:

" 'The discretion of the trial judge controls the nature and extent of the introduction of collateral

matters upon cross-examination and will never be reviewed except in cases of abuse and this will not be lightly inferred. 1 Greenleaf on Evidence (8th ed), §§ 446–448; *People* v. *McArron* (1899), 121 Mich 1. The discretion of the trial court upon the subject of cross-examination on collateral matters is not subject to review unless it is shown to have been grossly and oppressively abused. So far as the cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge and, unless abused, its exercise is not the subject of review.' *People* v. *MacCullough* (1937), 281 Mich 15, 24."

Therefore, in light of these authorities we are unable to find that the trial court abused its discretion in restricting cross-examination of the expert medical witness.

The last assignment of error which is raised on this appeal relates to the evidence and whether it was sufficient to establish each element of the crime of involuntary manslaughter. In the case at hand, the jury found defendant guilty of involuntary manslaughter, which contains no requirement of malice, but rather a finding of some inadvertent, unintentional, or negligent act. These elements are set forth in *People* v. *Ryczek* (1923), 224 Mich 106, 110, which states:

" 'Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.' "

Testimony adduced from the witnesses during the trial placed defendant alone with his infant daughter at times when the last three injuries were discovered.   The testimony also indicates that he slapped his daughter on the last two of the three above-mentioned occasions and that he and his wife attempted to soothe their daughter by stating that daddy was sorry and daddy wouldn't hit her again. Such evidence, if believed, would tie defendant to the injuries which medical experts had indicated to be inflicted by a blow delivered by a blunt instrument such as a hand.

Affirmed.

All concurred.